UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

MARIAH MARSHALL,

        Plaintiff,

        v.

KENDALL COUNTY SHERIFF DEPUTY
LENTINI, in his official and individual capac-
ity, KENDALL COUNTY SHERIFF DEP-
UTY BLOUIN, in his official and individual
capacity, VILLAGE OF OSWEGO OFFICER
HAYES, in her official and individual capac-
ity, THE VILLAGE OF OSWEGO, and KEN-
DALL COUNTY, ILLINOIS,

        Defendants.

No. 1:24-CV-08425

Judge Edmond E. Chang

MEMORANDUM OPINION AND ORDER

In September 2022, Mariah Marshall was in her car with her children when she was stopped and detained by law enforcement for a traffic violation. R. 1, Compl. ¶¶ 10–12, 19.[1] She now alleges that the sheriff's deputies and officer who conducted that stop used excessive force in violation of the Fourth Amendment and retaliated against her in violation of the First Amendment. *Id.* ¶¶ 25–39, 55–62. She also brings a conspiracy claim against the individual deputies and officer, a *Monell* claim against Kendall County, and indemnification and respondeat superior claims against Kendall

---

[1]Citations to the record are "R." followed by the docket entry number and, if needed, a page or paragraph number.

County and the Village of Oswego. *Id.* ¶¶ 40–54, 63–74.[2] She seeks compensatory damages, punitive damages, and attorneys' fees. *See generally id.* ¶¶ 25–74. All Defendants now move to dismiss the complaint for failure to adequately state a claim. Fed. R. Civ. P. 12(b)(6); R. 18, Cnty. Defs.' Mot; R. 19, Oswego Defs.' Mot. For the reasons discussed in this Opinion, the motions to dismiss are granted. The dismissal is without prejudice to filing an amended complaint if Marshall thinks she can fix the gaps described in this Opinion.

## I. Background

In deciding a motion to dismiss, the Court accepts well-pleaded facts as true and draws all reasonable inferences in the plaintiff's favor. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Erickson v. Pardus*, 551 U.S. 89, 94 (2007). In September 2022, Marshall was in her car with her children in Oswego. Compl. ¶¶ 10–12. Kendall County Sheriff's Deputies Lentini and Blouin, and Oswego Police Officer Hayes, pulled Marshall over for a minor traffic violation. *Id.* ¶¶ 10, 12; *see also* R. 22, Pl.'s Resp. at 1;[3] Cnty. Defs.' Mot. at 2 n.1 (explaining that Marshall misidentified Blouin as "Blouni" in her complaint). At some point during the stop, Marshall was aggressively removed

---

[2]This Court has federal-question jurisdiction of the federal claims under 28 U.S.C § 1331, and supplemental jurisdiction over the state law claims under 28 U.S.C. § 1367(a).

[3]Marshall was directed to file a joint response to both motions to dismiss in a single brief, *see* R. 17, 12/13/2024 Minute Entry. But she filed her responses to each motion separately. *See* Pl.'s Resp.; R. 23, Pl.'s Resp. to Oswego. The two response briefs appear to be identical in substance, with the exception of her response to the County including one additional paragraph in its fact section. Pl.'s Resp. at 3 ¶ 10. For the purposes of this Opinion, the Court will refer to Marshall's more-inclusive response to the County, R. 22, as her response brief generally.

from her car by Lentini and thrown to the ground via a straight-arm take down. Compl. ¶¶ 13–14. Lentini then proceeded to arrest and handcuff Marshall, breaking her elbow in the process. *Id.* ¶ 14. Once arrested, the officers brought criminal charges against Marshall.[4] *Id.* ¶¶ 19–20. Three months later, Marshall pled guilty to resisting a peace officer, under 720 ILCS 5/31-1(a), in connection with the September 2022 incident. R. 18, Cnty's Exh. A, Guilty Plea.[5]

Marshall alleges that Lentini used excessive force on her, turning a minor traffic stop into an aggressive arrest after she made remarks that he deemed "hostile." Compl. ¶¶ 26, 58, 60–61. She also alleges that Blouin and Hayes witnessed Lentini's actions but failed to intervene, and then conspired with Lentini to create false documentation and charge her with resisting arrest as a means of covering up their wrongdoing. *Id.* ¶¶ 15–16, 19–20, 41. So Marshall filed this suit under 42 U.S.C. § 1983, bringing Fourth Amendment excessive force and conspiracy claims against each of the individual law-enforcement officers, a First Amendment retaliation claim against Lentini, and a *Monell* claim against Kendall County. *Id.* ¶¶ 25–42, 55–74. She also

---

[4]The Complaint does not specify which crime (or crimes) she was charged with at the time. Compl. ¶¶ 19–20.

[5]The Complaint does not mention Marshall's guilty plea, nor does it provide it as an exhibit. The County attached the plea document as an exhibit to its motion to dismiss. "As a general rule, [courts] may take judicial notice of public records not attached to the complaint in ruling on a motion to dismiss under Rule 12(b)(6). *Olson v. Champaign County*, 784 F.3d 1093, 1097 n.1 (7th Cir. 2015) (taking judicial notice of criminal-charging documents submitted as exhibits to a defendant's motion to dismiss). Of course, the factual assertions in a public record may be disputed, but the Court may take notice of the public record itself.

brings state law indemnification and respondeat superior claims against both the County and Oswego. *Id.* ¶¶ 43–54.

## II. Legal Standard

Under Federal Rule of Civil Procedure 8(a)(2), a complaint generally need only include "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). This short and plain statement must "give the defendant fair notice of what the claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (cleaned up).[6] The Seventh Circuit has explained that this rule "reflects a liberal notice pleading regime, which is intended to 'focus litigation on the merits of a claim' rather than on technicalities that might keep plaintiffs out of court." *Brooks v. Ross*, 578 F.3d 574, 580 (7th Cir. 2009) (quoting *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 514 (2002)).

"A motion under Rule 12(b)(6) challenges the sufficiency of the complaint to state a claim upon which relief may be granted." *Hallinan v. Fraternal Ord. of Police of Chi. Lodge No. 7*, 570 F.3d 811, 820 (7th Cir. 2009). "[A] complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (cleaned up). These allegations "must be enough to raise a right to relief above the speculative level." *Twombly*, 550

---

[6]This Opinion uses (cleaned up) to indicate that internal quotation marks, alterations, and citations have been omitted from quotations. *See* Jack Metzler, *Cleaning Up Quotations*, 18 Journal of Appellate Practice and Process 143 (2017).

U.S. at 555. The allegations that are entitled to the assumption of truth are those that are factual, rather than mere legal conclusions. *Iqbal*, 556 U.S. at 678–79.

### III. Analysis

### A. Federal Claims

### 1. Excessive Force and Conspiracy

The Defendants argue that Marshall's claims for excessive force and conspiracy are barred because Marshall pled guilty to resisting arrest. Cnty. Defs.' Mot. at 4–6; R. 20, Oswego Defs.' Br. at 3–6. Based on the current complaint, the Defendants are right: Marshall's federal claims (at least in their current form) are barred.

The Defendants first assert that Marshall's claims are barred by the *Heck* doctrine, which instructs that "when establishing the basis for the damages claim necessarily demonstrates the invalidity of the conviction," the "claimant can be said to be attacking the fact or length of confinement." *Heck v. Humphrey*, 512 U.S. 477, 481–82 (1994) (cleaned up); *see also* Cnty. Defs.' Mot. at 4–6; Oswego Defs.' Br. at 4–6. For this reason, "in order to recover damages for allegedly unconstitutional conviction or imprisonment, or for other harm caused by actions whose unlawfulness would render a conviction or sentence invalid, a § 1983 plaintiff must prove that the conviction or sentence" has been reversed or otherwise called into question. *Heck*, 512 U.S. at 486–87 (footnote omitted). So a district court considering a § 1983 claim for damages "must consider whether a judgment in favor of the plaintiff would necessarily imply the invalidity of h[er] conviction." *Id.* at 487. But the *Heck* doctrine is not a categorical bar: it requires a case-by-case inquiry. So only "if the plaintiff's *factual claims* in the

5

civil suit necessarily imply the invalidity of the criminal conviction, then *Heck* bars the civil suit." *Tolliver v. City of Chicago*, 820 F.3d 237, 243 (7th Cir. 2016) (emphasis added).

If the Court accepts Marshall's version of events as true—as is required at the pleading stage—Marshall did not resist arrest, violate state law, or commit any criminal acts aside from a minor traffic violation. Compl. ¶¶ 13, 18–19. Yet she was forcefully removed from her car, thrown to the ground, and charged with resisting arrest through false documentation. *Id.* ¶¶ 13–14, 19–20, 41. But then she pled guilty to resisting arrest. Cnty's Exh. A, Guilty Plea. So the excessive-force and conspiracy claims depend on a version of events wholly at odds with her guilty plea, and they are barred by the *Heck* doctrine. *Okoro v. Callaghan*, 324 F.3d 488, 490 (7th Cir. 2003) (barring suit where the plaintiff "adhere[s] steadfastly" to a version of events that is inconsistent with their conviction).

Marshall argues that a suit for excessive force is not necessarily premised on challenging the conviction, imprisonment, or "other harm caused by actions whose unlawfulness would render conviction invalid," *Heck*, 512 U.S. at 486, and so the *Heck* bar does not apply. Pl.'s Resp. at 4. She cites *Evans v. Poskon*, 603 F.3d 362, 363 (7th Cir. 2010), arguing that "convictions for arrest are *not* inherently incompatible with a subsequent suit for excessive force." Pl.'s Resp. at 4 (emphasis in original). The Court agrees: excessive-force suits do not *automatically* imply the invalidity of a resisting-arrest conviction. Consider an unarmed arrestee who takes one step back away from an officer who is attempting to make an arrest—and then the officer

immediately shoots the arrestee. The arrestee would be guilty of resisting arrest, but of course an excessive-force claim would be viable without implying the invalidity of the conviction.

But the allegations matter. And here the set of facts Marshall has pleaded *would* require the Court to find that her guilty plea is invalid. *Evans* illustrates the line between compatible versus incompatible excessive-force claims after a conviction for resisting arrest. There, the plaintiff contended that (1) he did not resist arrest, (2) that the police used excessive force to arrest him, and (3) that they beat him after he was in custody. *Evans*, 603 F.3d at 364. The Seventh Circuit held that his first claim was "incompatible with his conviction," necessitating dismissal. *Id.* But the other two claims—that the police used more force than necessary in taking the plaintiff into custody and continued to use force once he was in custody—may coexist with his conviction for resisting arrest. *Id.*

In her response, Marshall argues that she "should be given the opportunity to abandon the proposition that she did not resist arrest and proceed with all other aspects of her suit" and requests "leave to amend the Complaint to remove any denials relating to her conviction for resisting arrest." Pl.'s Resp. at 5, 8. On the current complaint, Marshall's excessive-force and conspiracy claims are almost entirely premised on the allegation that she did not resist arrest. She does not allege that the officers used more force than necessary to arrest and handcuff her, or that they continued to use excessive force once she was detained. Instead, she argues that she was not resisting arrest at all but was taken to the ground and handcuffed despite that. Compl.

7

¶¶ 13–14, 18–20, 41. So Marshall's abandonment of the *Heck*-barred propositions would not readily cure her excessive-force and conspiracy claims, and they must be dismissed. But Marshall is granted leave to file an amended complaint if she thinks that she can plead a set of facts that are not at war with her criminal conviction. *Okoro*, 324 F.3d at 490 (explaining that the plaintiff "is the master of h[er] ground," and thus may allege facts that "would cast no cloud over the conviction"). Depending on the facts, it might be easy to fix the pleading, but that is the better course than trying to subtract the currently intertwined allegations.

As noted earlier, it would not be unusual for an excessive-force claim to avoid the *Heck* bar even after a conviction for resisting arrest: one scenario would arise if the plea was only to the bare elements of the criminal statute—which criminalizes "resist[ing] arrest" or "obstruct[ing] the performance by one known to the person to be" a law-enforcement officer. 720 ILCS 5/31-1(a); *see also Tolliver*, 820 F.3d at 244 (explaining that an excessive-force claim could survive the *Heck* bar even if the plaintiff had physically struck an officer, because otherwise officers "could maul anyone who strikes them, without risk of civil liability as long as the private party is punished by criminal prosecution … for the initial wrong." (cleaned up)). With no state court plea colloquy attached to the pleading (or to the dismissal motions, for that matter), it is difficult for the Court to assess how readily Marshall's conviction may be squared with excessive force and conspiracy claims to avoid the *Heck* bar.

Finally, having concluded that the excessive-force and conspiracy claims are barred by *Heck* right now, the Court need not consider the Defendants' arguments

8

that these claims are also barred by issue preclusion. *See* Cnty. Defs.' Mot. at 7–8, Oswego Defs.' Br. at 6–7. With that said, if Marshall is able to amend her complaint to fix the *Heck* problem—and if the Defendants re-file their motions to dismiss—then the Court reminds the parties that issue preclusion is an affirmative defense, so Marshall is not required to plead around it. *See Davis v. Ind. State Police*, 541 F.3d 760, 763 (7th Cir. 2008). So if the Defendants plan to argue issue preclusion again, then they must supply the plea colloquy so that the Court can understand the set of facts on which the conviction was decided. As explained above, if the plea was only to the bare elements of the offense, then issue preclusion would almost surely not bar the excessive-force and conspiracy claims.

### 2. *Monell* Liability

Next, the County argues that Marshall's claim against it for *Monell* liability should be dismissed because she has not adequately alleged a constitutional violation by the individual County Defendants (Lentini and Blouin). Cnty. Defs.' Mot. at 10–11. Marshall's only response to this argument is to maintain that she has adequately pleaded a claim for excessive force, which is the basis of her *Monell* claim. Pl.'s Resp. at 11. But the County is right: with the excessive-force claims dismissed (for now), there is no constitutional violation to which *Monell* liability could attach.

In *Monell,* the Supreme Court held that "[l]ocal governing bodies … can be sued directly under § 1983 for monetary, declaratory, or injunctive relief where … *the action that is alleged to be unconstitutional* implements or executes a policy statement, ordinance, regulation, or decision officially adopted and promulgated by that

9

body's officers." *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 690 (1978) (footnote omitted) (emphasis added). Thus, to adequately state a *Monell* claim—that is, to allege that a municipality caused a deprivation of the plaintiff's constitutional rights—the plaintiff must allege "that an official policy or custom not only caused the constitutional violation, but was the moving force behind it." *Estate of Sims ex rel. Sims v. County of Bureau*, 506 F.3d 509, 514 (7th Cir. 2007) (cleaned up). It follows, then, that (generally speaking) there can be no *Monell* liability based on the actions of officers "when in fact … the officer inflicted no constitutional harm." *City of Los Angeles v. Heller*, 475 U.S. 796, 799 (1986); *see also Pulera v. Sarzant*, 966 F.3d 540, 555 (7th Cir. 2020) (explaining that where a plaintiff's individual claims fail, then generally "so too must h[er] *Monell* claims"). And although it is true that individual liability is "not always a prerequisite for municipal liability," *Pulera*, 966 F.3d at 555, generally speaking "a government entity cannot passively commit a Fourth Amendment violation," *King v. Hendricks Cnty. Comm'rs*, 954 F.3d 981, 987 (7th Cir. 2020).

Marshall's *Monell* claim against the County is wholly premised on the survival of her excessive-force claim against the individual deputies, so it must be dismissed for now.[7]

---

[7]Despite the fact that Marshall also brings a First Amendment claim against County employee Lentini, Compl. ¶¶ 55–62, she does not appear to argue that as a second basis for the *Monell* claim against the County. Pl.'s Resp. at 11. But even if she had, that argument would also fail for the same reasons it failed in the Fourth Amendment context. *See infra* 10–13.

### 3. Retaliation

The County also argues that Marshall's claim for First Amendment retaliation against Lentini should be dismissed because she has not sufficiently pleaded it. Cnty. Defs.' Mot. at 8–10. To plausibly state a claim for First Amendment retaliation, Marshall must allege that (1) her speech was constitutionally protected, (2) she suffered an adverse action or a deprivation likely to deter free speech, and (3) the protected conduct was at least a motivating factor behind the adverse action. *Holleman v. Zatecky*, 951 F.3d 873, 878 (7th Cir. 2020); *Massey v. Johnson*, 457 F.3d 711, 716 (7th Cir. 2006). "Under Twombly, this means that plaintiff cannot state a claim for retaliation unless [s]he identifies h[er] protected conduct and includes facts showing that h[er] claim is supported by more than just speculation." *Holliman v. Paquin*, 2010 WL 3522127, at *2 (W.D. Wis. Sept. 8, 2010). The County concedes that Marshall's allegation of excessive force satisfies the second element. Cnty. Defs.' Mot. at 8. But the County argues that the complaint fails to adequately plead the first and third elements. The County is right: Marshall has not stated a viable retaliation claim.

First, Marshall fails to allege any *concrete* facts about the content of her speech. In fact, the first mention of any speech at all in the complaint is in Count Nine, in which she alleges that Lentini "us[ed] excessive force against her … for merely speaking words that Lentini objectively observed to be 'hostile.'" Compl. ¶ 58. She goes on to allege that she "was engaged in protected speech," and that Lentini "clearly state[d]" that her speech was protected "more than once during the encounter." *Id.* ¶ 59. But nowhere in the complaint does Marshall supply any allegations about the

11

nature and content of her speech. And "without any elaboration, the speech that the plaintiff *thought* was protected might not be, and because the possibility that it is unprotected cannot be tested, the complaint should be dismissed." *Marmarchi v. Bd. of Trs. of Univ. of Ill.*, 715 F. App'x 529, 532 (7th Cir. 2017) (non-precedential disposition) (emphasis in original); *see also Kyle v. Morton High Sch.*, 144 F.3d 448, 456 (7th Cir. 1998) (explaining that the "gravamen of a First Amendment claim is speech," and vague allegations of "political innuendo," for example, are insufficient to put a defendant on notice).

Marshall argues that her claim should not be dismissed for mere failure to "specify the precise words" she said to Lentini. Pl.'s Resp. at 9. And that is true: Marshall is not required to provide a verbatim transcript of her remarks to Lentini to state her retaliation claim. But a complaint that "never specifies what (if anything)" the plaintiff said to allegedly cause an adverse action precludes the Court from assessing whether the speech is plausibly protected at all. *Marmarchi*, 715 F. App'x at 532. Marshall also argues that her allegation that Lentini apparently admitted that her speech was protected should also suffice for this element of the claim. Pl.'s Resp. at 10 (citing Compl. ¶ 59). But the operative question is not whether Lentini *thought* Marshall's speech was protected; it is whether the speech itself was legally protected. Thus, an allegation that Lentini admitted to a legal conclusion does not amount to a claim. *Kyle*, 144 F.3d at 455 ("The plaintiff cannot state a claim by attaching a bare conclusion to the facts he narrates." (cleaned up)).

Second, the dearth of facts about the content of Marshall's speech also dooms her retaliation claim on the third, "motivating factor" element. To satisfy this element, Marshall must "plausibly explain what led [her] to believe [her] treatment was *because of* the protected activity." *Dorsey v. Williams,* 2022 WL 337192, at *1 (7th Cir. Feb. 4, 2022) (cleaned up) (emphasis in original). Failure to put a defendant on notice that some speech led to an adverse action impedes "the defendant['s] ability to … investigate [her] claim …." *EEOC v. Concentra Health Servs., Inc.*, 496 F.3d 773, 781 (7th Cir. 2007) (cleaned up). So although Marshall alleges in her complaint that Lentini's use of force was a response to her speech, Compl. ¶¶ 58, 60–61, it is essentially impossible for the Court to assess the plausibility of this contention without knowing the *content* of the speech itself. It is probably true that if Marshall's amended complaint supplies sufficient factual detail to allege that her speech was protected, then it would also sufficiently allege that the speech did motivate Lentini to use excessive force. But without more information on what Marshall said (which is a fact that is presumably within her personal knowledge), the Court also lacks a factual basis to assess the sufficiency of the "motivating factor" allegation. The claim for First Amendment retaliation is thus dismissed, though without prejudice.

## B. State Law Claims

Finally, the Defendants argue that Marshall's state law claims for indemnification and respondeat superior liability should be dismissed because they are time-barred and dependent on underlying substantive claims that have failed. Cnty. Defs.' Mot. at 11–12; Oswego Defs.' Br. at 7–8. Marshall responds that her substantive

13

claims are sufficiently pleaded, so the Defendants' arguments about their supplemental and derivative nature are unfounded. Pl.'s Resp. at 11–12. She also argues that, because her substantive claims here are all grounded on § 1983, her claims were timely filed. *Id.*

The Defendants are right that Marshall's respondeat superior claims—to the extent that they are premised on § 1983 claims—must be dismissed. There is no respondeat superior liability under § 1983; indeed, there is no vicarious liability under § 1983 at all. *Howell v. Wexford Health Sources, Inc.*, 987 F.3d 647, 653 (7th Cir. 2021) (explaining that "*Monell* rejected the common-law theory of respondeat superior liability for an employee's actions"). Marshall has seemingly conceded that her respondeat superior claims against the County and Oswego are "derivative of [her] substantive Section 1983 claims," so they must be dismissed for now. *See* Pl.'s Resp. at 12. Marshall is of course free to re-plead a respondeat superior claim premised on a substantive state law tort claim. As best as the Court can discern, she has not done so.

The indemnification claims must likewise be dismissed—but for a different reason. Unlike the respondeat superior claims, Marshall may seek indemnification under Illinois law for liability on the § 1983 claims. *See Corbett v. Biggs*, 2005 WL 991903, at *11 (N.D. Ill. Mar. 23, 2005) (noting that "under 745 ILCS § 10/9-102, a plaintiff may bring such a claim against a municipality in a section 1983 suit"); *Yang v. City of Chicago*, 137 F.3d 522, 526–27 (7th Cir. 1998) (finding the city derivatively liable under § 10/9-102 for judgment against individual officer under § 1983). But

14

because Marshall's substantive § 1983 claims must be dismissed, her indemnification claims against the County and Oswego are also dismissed.

It is worth noting that if Marshall re-pleads her indemnification claim in connection with a sufficient § 1983 claim, she will not be time-barred. As Marshall points out, the Seventh Circuit has held that generally the proper statute of limitations for § 1983 claims in Illinois is two years—not just one year as the Defendants argue. *Palmer v. Bd. of Educ. of Cmty. Unit Sch. Dist. 201-U*, 46 F.3d 682, 684 (7th Cir. 1995). As both parties agree, Marshall's claims arose on September 16, 2022, and she filed her suit on September 13, 2024. *See* Compl. ¶ 10; Cnty. Defs.' Mot. at 11–12; Oswego Defs.' Br. at 8. Thus, her indemnification claim was filed timely.

## IV. Conclusion

The current complaint is dismissed, though without prejudice and with leave to amend. The amended complaint, if any, is due on October 14, 2025. If no amended complaint is filed, then the dismissal of the federal claims will automatically convert to a dismissal with prejudice.

ENTERED:

s/Edmond E. Chang
Honorable Edmond E. Chang
United States District Judge

DATE: September 26, 2025

15