**UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| Mariah Marshall,<br><br>Plaintiff,<br><br>v.<br><br>Kendall County Sheriff Deputy Lentini, in his official and individual capacity, Kendall County Sheriff Deputy Blouin, in his official and individual capacity, Village of Oswego Officer Hayes, in her official and individual capacity, The Village of Oswego, and Kendall County, Illinois,<br><br>Defendants. | NO. 1:24-CV-08425<br><br>Judge Edmond E. Chang |

**MEMORANDUM OPINION AND ORDER**

Mariah Marshall alleges that a sheriff's deputy used excessive force against her during a traffic stop in September 2022. R. 32, First Am. Compl. ¶¶ 10, 12–24.[1] She brings claims under the Fourth Amendment against the deputy and two other law enforcement officers who allegedly failed to intervene; for conspiracy against all three officers; for indemnification against Kendall County and the Village of Oswego; and under *Monell* against Kendall County. *Id.* ¶¶ 23, 34–75.[2] The Defendants move to dismiss, as inadequately pleaded, the claims for conspiracy, *Monell,* and failure to intervene. R. 36, Cnty. Defs.' Mot.; R. 40, Oswego Defs.' Mot. Because Marshall does

[1]Citations to the record are "R." followed by the docket entry number and, if needed, a page or paragraph number.

[2]This Court has subject matter jurisdiction over the federal claims under 28 U.S.C. § 1331 and supplemental jurisdiction over the state law claims under 28 U.S.C. § 1367(a).

not plausibly allege a conspiracy or *Monell* liability, the County Defendants' motion is granted. The dismissal of those claims is without prejudice to filing a second amended complaint. But because Marshall plausibly alleges failure to intervene, the Oswego Defendants' motion to dismiss is denied.

## I. Background

For the purposes of these motions, the Court accepts as true the factual allegations in Marshall's First Amended Complaint and draws all reasonable inferences in her favor. *McGowan v. Hulick*, 612 F.3d 636, 638 (7th Cir. 2010) (citing *Erickson v. Pardus*, 551 U.S. 89, 90 (2007) (per curiam)).

On September 16, 2022, Marshall was driving with her two young children when Kendall County Sheriff's Deputies Lentini and Blouin, and Oswego Police Officer Hayes, pulled her over for a traffic violation. First Am. Compl. ¶¶ 10, 12. Lentini asked Marshall for her identification. *Id.* ¶ 13. Marshall explained that she did not have her identification with her because she had recently returned from a trip and had not yet unpacked her belongings. *Id.* ¶ 14. Lentini continued to demand identification in an increasingly hostile manner. *Id.* ¶ 15. Eventually, Marshall stopped responding to Lentini and complying with his commands. *Id.* ¶ 16. She turned towards one of the other two officers and asked if she could communicate with them because Lentini was acting aggressively. *Id.* ¶¶ 17–18. When Marshall's head was turned, Lentini reached into her vehicle, put the gear into park, unbuckled Marshall's seat belt, and pulled her from the vehicle by her arm. *Id.* ¶ 18. Lentini performed a straight-arm takedown or wrist-lock takedown (or both), throwing Marshall to the

ground. *Id.* ¶ 20. He then pulled aggressively on Marshall's arm to handcuff her, fracturing her left elbow. *Id.* ¶ 21. Blouin and Hayes saw what Lentini was doing but they did not intervene. *Id.* ¶ 23.

A few days later, Marshall was charged with resisting or obstructing a peace officer in violation of Illinois law. First Am. Compl. ¶ 28. In December 2022, she pled guilty to the bare elements of the statute. *Id.* ¶¶ 29–30; R. 32-1, Guilty Plea.

Marshall sued, bringing Fourth Amendment excessive-force and conspiracy claims against the officers, a First Amendment retaliation claim against Lentini, indemnification and vicarious liability claims against Kendall County and the Village of Oswego, and a *Monell* claim against Kendall County. R. 1, Compl. ¶¶ 25–74. The Court dismissed the initial complaint without prejudice for failure to state a claim. R. 31, Op. at 5–15. Marshall then brought a First Amended Complaint, which the Defendants move to dismiss in part.

## II. Legal Standard

Under Federal Rule of Civil Procedure 8(a)(2), a complaint generally need only include "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). This short and plain statement must "give the defendant fair notice of what the claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (cleaned up).[3] The Seventh Circuit has

[3]This Opinion uses (cleaned up) to indicate that internal quotation marks, alterations, and citations have been omitted from quotations. *See* Jack Metzler, *Cleaning Up Quotations*, 18 Journal of Appellate Practice and Process 143 (2017).

explained that this rule "reflects a liberal notice pleading regime, which is intended to 'focus litigation on the merits of a claim' rather than on technicalities that might keep plaintiffs out of court." *Brooks v. Ross*, 578 F.3d 574, 580 (7th Cir. 2009) (quoting *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 514 (2002)). At the same time, the Supreme Court instructs that "[d]etermining whether a complaint states a plausible claim for relief will … be a context-specific task." *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009). The Seventh Circuit has drawn a context-dependent distinction between relatively straightforward employment discrimination claims versus more complex claims. *Swanson v. Citibank, N.A.*, 614 F.3d 400, 404–05 (7th Cir. 2010).

"A motion under Rule 12(b)(6) challenges the sufficiency of the complaint to state a claim upon which relief may be granted." *Hallinan v. Fraternal Ord. of Police of Chi. Lodge No. 7*, 570 F.3d 811, 820 (7th Cir. 2009). "[A] complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Iqbal*, 556 U.S. at 678 (cleaned up). These allegations "must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. The allegations that are entitled to the assumption of truth are those that are factual, rather than mere legal conclusions. *Iqbal*, 556 U.S. at 678–79.

## III. Analysis

### A. Conspiracy

To plausibly state a claim for conspiracy under 42 U.S.C. § 1983, a plaintiff must allege "(1) an express or implied agreement among defendants to deprive plaintiff of his or her constitutional rights and (2) actual deprivations of those rights in the

form of overt acts in furtherance of the agreement." *Scherer v. Balkema*, 840 F.2d 437, 442 (7th Cir. 1988). A plaintiff cannot merely allege that there was an agreement; "such allegations … must further be supported by some factual allegations suggesting a meeting of the minds." *Amundsen v. Chi. Park Dist.*, 218 F.3d 712, 718 (7th Cir. 2000) (cleaned up). In other words, "the alleged acts must be sufficient to raise the inference of mutual understanding (i.e., the acts performed by the members of a conspiracy are unlikely to have been undertaken without an agreement)" and "a whiff of the alleged conspirators' assent must be apparent in the complaint." *Id.* (cleaned up).

Here, the County Defendants argue that Marshall fails to allege any *facts* that plausibly suggest that there was an agreement between the three law enforcement officers. Cnty. Defs.' Mot. at 4–6. Marshall responds that the First Amended Complaint "contains facts from which assent by the other officers" to Lentini's use of force "may be inferred." R. 42, Pl.'s Resp. Br. at 12–16. But all Marshall alleges is that Blouin and Hayes were present at the traffic stop, that Marshall briefly turned to address one of them after Lentini grew increasingly hostile, and that Blouin and Hayes observed Lentini use excessive force but did not intervene. First Am. Compl. ¶¶ 10, 12, 17, 23. Yes, these facts suggest that Blouin and Hayes stood by while Lentini used excessive force (as the Court will explain later in this Opinion). But a failure to intervene alone does not raise an inference that Blouin and Hayes had an implicit *agreement* with Lentini to use force against Marshall.

The only other allegation that Marshall points to is that Blouin knew that Lentini had a history of committing civil rights violations and other misconduct. Pl.'s

Resp. Br. at 14; First Am. Compl. ¶ 72. But this conclusory allegation lacks any factual basis. Marshall does not provide any specific, concrete details about these alleged past violations like when they occurred, what happened (such as how similar the traffic stop and the prior misconduct were), or who was involved. So this conclusory allegation cannot support the conspiracy claim. In any event, Marshall does not allege that *Hayes* knew about Lentini's history. And even if both Blouin and Hayes had such knowledge, mere knowledge of Lentini's history does not plausibly suggest that Blouin or Hayes affirmatively *agreed* to use excessive force.

Without more, Marshall cannot plausibly allege an agreement between the officers. For instance, Marshall does not allege that Hayes (a Village police officer) had any preexisting relationship with Lentini and Blouin (County sheriff's deputies). *See Dawson v. Brown*, 81 F. Supp. 3d 670, 680 (C.D. Ill. 2015). Nor does she allege that Blouin or Hayes joined Lentini and used force against her. *See Redd v. Nolan*, 663 F.3d 287, 292 (7th Cir. 2011). To be clear, even those allegations might still be insufficient to state a claim. But the absence of *any* factual allegations suggesting an agreement between Lentini, Blouin, and Hayes renders Marshall's conspiracy claim implausible. She fails to state a conspiracy claim, and it must be dismissed.

Because this is the Court's first dismissal of the conspiracy claim, it is dismissed without prejudice. Marshall has leave to file a second amended complaint if she believes she can allege additional facts to plausibly state a conspiracy claim.[4] If

[4]It is worth noting that the conspiracy claim does not appear to add anything to Marshall's case. She already states plausible Fourth Amendment claims against each officer. *See*

no second amended complaint is filed with a new conspiracy claim by September 16, 2026, then the dismissal of that claim will automatically convert to a dismissal with prejudice.

### B. *Monell* Liability

At the outset, all parties agree that the correct municipal defendant for Marshall's *Monell* claim is the Kendall County Sheriff's Office, not the County itself. Cnty. Defs.' Mot. at 8–9; Pl.'s Resp. Br. at 22–24. So if Marshall repleads her *Monell* claim, she should name the Sheriff's Office as the proper defendant. But for the purposes of its analysis, the Court reviews Marshall's allegations as if they were against the Sheriff's Office, not the County.

To state a *Monell* claim, a plaintiff must plausibly allege (1) the deprivation of an underlying substantive constitutional right; (2) the existence of an official policy or custom; and (3) that this policy or custom was the "moving force" behind the deprivation of her substantive constitutional right. *Teesdale v. City of Chicago*, 690 F.3d 829, 833 (7th Cir. 2012) (cleaned up). And to allege the existence of an official policy or custom, a plaintiff must point to "(1) an express policy that, when enforced, causes a constitutional deprivation; (2) a widespread practice that, although not authorized by written law or express municipal policy, … constitute[s] a custom or usage with

*infra* Section III.C (denying motion to dismiss the failure-to-intervene claim against Hayes). And any damages she might receive will be based on her injuries from the incident, not on each claim. *See Portalatin v. Blatt, Hasenmiller, Leibsker & Moore, LLC*, 900 F.3d 377, 383 (7th Cir. 2018) ("[A] plaintiff is only entitled to a single recovery for a single injury, regardless of … how many different theories of recovery could apply to that single injury.").

the force of law"; or (3) "a person with final policymaking authority" who caused her constitutional injury. *McTigue v. City of Chicago*, 60 F.3d 381, 382 (7th Cir. 1995) (cleaned up).

Marshall says that the Kendall County Sheriff's Office is liable under the second theory, alleging that it "has a custom, pattern, practice, and/or procedure of committing police violence amongst the community." First Am. Compl. ¶ 70. To support this allegation, she points to (1) the Sheriff's Office's "police violence" score on a website called Police Scorecard, and (2) her allegation, mentioned previously, that Blouin knew that Lentini had committed prior civil rights violations and misconduct. *Id.* ¶¶ 71–72.

But these allegations do not plausibly suggest that the Sheriff's Office has a custom or pattern of committing police violence against the community. As already described, Marshall's allegation about Lentini's prior civil rights violations and misconduct is completely conclusory. *See supra* Section III.A. Without any supporting facts, this conclusory allegation cannot raise an inference that the Sheriff's Office has a custom of police violence.

Nor can the website "police violence" score support Marshall's allegation. As the County Defendants note, the score is essentially meaningless because it is based on insufficient data. Cnty. Defs.' Mot. at 7–8; *see* Police Scorecard, Kendall County Sheriff's Department, https://policescorecard.org/il/sheriff/kendall-county (last visited Sept. 1, 2026). The website reports no data for metrics like "Unarmed Victims of Deadly Force per Arrest" and "Excessive Force Complaints Upheld." Police Scorecard.

Marshall cites arrest-rate metrics from the website, but arrest rates are unrelated to whether the Sheriff's Office routinely commits violence against community members. *See id.*; First Am. Compl. ¶ 71. The lack of reliable data distinguishes this case from *Flores Delgado v. City of Chicago*, 547 F. Supp. 3d 824 (N.D. Ill. 2021), on which Marshall relies. *See id.* at 832 (concluding that plaintiff stated a *Monell* claim where the complaint included "allegations regarding the number of excessive force complaints investigated, the number found to have merit, and examples of the City failing to investigate or otherwise condoning officers' use of deadly force").

The only relevant metrics that the website includes are "Force Used per Arrest" and "Deadly Force per Arrest," for which Kendall County scored 70% and 26%, respectively. Police Scorecard. The first metric means that the Kendall County Sheriff's Department used the same amount or less force per arrest than 70% of other sheriff's departments in Illinois. *See id.* And Kendall County scored 26% on "Deadly Force per Arrest" because the Sheriff's Office killed one civilian between 2013 and 2025. *Id.* Although every death is regrettable, one civilian death during a 12-year period does not plausibly suggest that the Sheriff's Office has a *pattern* of committing police violence against community members. Overall, the Sheriff's Office's police violence score is 49%, which means it falls almost exactly at the median of counties in Illinois; in other words, the Sheriff's Office commits less police violence than law enforcement in about half of Illinois's counties. *Id.* Thus, the website does not support Marshall's allegation that the Sheriff's Office has a custom or practice of police violence.

What's more, even if the website contained complete data and rated Kendall County poorly, it may still not support Marshall's allegation. The website's data offer limited insight into the frequency of police violence in Kendall County because the site ranks counties *relative* to each other. So a poor score on police violence may be attributable to extremely low rates of police violence in other Illinois counties, rather than frequent police violence in Kendall County.

That leaves only one factual allegation related to police violence: Marshall's own experience with Lentini. Of course, there is no blanket rule that *Monell* plaintiffs must always allege multiple instances of unconstitutional conduct to show that a custom exists. There are contexts in which an allegation of a single instance of wrongdoing is enough to support an inference that a more *systemic* custom exists. For example, in the medical-treatment context, a single allegation that a jail doctor refused to perform a procedure and explained to the detainee that the municipality *never* allows that particular procedure might be enough to support an inference of a systemic policy or custom. Similarly, in *White v. City of Chicago*, 829 F.3d 837 (7th Cir. 2016), a Seventh Circuit case which Marshall cites, the plaintiff was challenging an arrest-warrant-application policy premised in part on a "standard printed form that does not require specific factual support for an application for an arrest warrant." *Id.* at 844. The Seventh Circuit held that the form's lack of a factual-support section (coupled with the plaintiff's description of his individual experience) was enough to allege that a widespread policy existed. *Id.* The fact that a "standard form" was used in one

particular instance could support a reasonable inference that that standard form was also used in all or many instances.

But Marshall's case arises in a different context from these examples. Marshall's allegations are specific to her, rather than suggestive of a more systemic practice. The fact that Marshall was allegedly subjected to excessive force by Lentini does not, on its own, suggest that the Kendall County Sheriff's Office as a whole has a widespread custom of committing violence against the community. This is unlike *White*, for instance, where evidence of a systemic problem (the inadequate warrant-application form) was embedded in the plaintiff's individual experience. Ultimately, because Marshall does not allege any concrete facts that raise a plausible inference that the Sheriff's Office has a custom or practice that caused her alleged constitutional violations, she fails to state a *Monell* claim.

Marshall argues that requiring additional factual allegations to state her *Monell* claim applies an impermissibly heightened pleading standard. Pl.'s Resp. Br. at 17–22. She contends that the "police violence" score from Police Scorecard should be adequate because there is no better public information available about the Kendall County Sheriff's Office. *Id.* But there are ways that Marshall could have found more reliable, relevant data. For example, Marshall could have submitted a Freedom of Information Act request to the Sheriff's Office. Marshall may also still try to establish the existence of a policy or custom through discovery from the *individual officers* about what they personally know. So, for instance, she is free to ask Deputies Lentini and Blouin about whether they have ever been investigated for using excessive force,

and about the results of those investigations. Those are the sorts of questions that a plaintiff is allowed to ask when exploring individual-officer liability, and they can also be the basis for a viable set of *Monell* allegations. Because discovery has moved forward, maybe Marshall has gathered facts like that. (In contrast, Marshall is not permitted at this point to engage in broad-based *Monell* discovery against the Sheriff's Office itself.) In any event, because the dismissal of her *Monell* claim is without prejudice, depending on the types of admissions Marshall can elicit from the individual officers, she might be able to then replead a viable *Monell* claim. The Court sets the Rule 16(b) deadline for amending pleadings at October 12, 2026.

**C. Failure to Intervene**

"An officer who is present and fails to intervene to prevent other law enforcement officers from infringing the constitutional rights of citizens is liable under § 1983 if that officer had reason to know … that excessive force was being used, … *and* the officer had a realistic opportunity to intervene to prevent the harm from occurring." *Yang v. Hardin*, 37 F.3d 282, 285 (7th Cir. 1994) (emphasis in original). The Oswego Defendants argue that Marshall fails to state a claim against Hayes because, based on the facts alleged, she did not have a realistic opportunity to intervene. R. 40-1, Oswego Defs.' Br. at 3–5.

Specifically, the Oswego Defendants first contend that Marshall does not even allege that Hayes witnessed Lentini's use of force. Oswego Defs.' Br. at 4. In other words, they say that Hayes may have simply "observed the aftermath of the excessive

force." *Id.* Not so. Marshall clearly alleges that Blouin and Hayes were present during the traffic stop and observed Lentini's actions. First Am. Compl. ¶¶ 10, 17, 23.

The Oswego Defendants next contend that even if Hayes witnessed the entire incident, Hayes had no reason to know that Lentini would use excessive force and no time to intervene. Oswego Defs.' Br. at 4–5. To support their argument, the Oswego Defendants cite cases where the alleged excessive force took place in a quick instant, and thus the other officers present had no reasonable opportunity to intervene. *See, e.g.*, *Lanigan v. Village of East Hazel Crest*, 110 F.3d 467, 478 (7th Cir. 1997) (concluding that the defendant did not have a realistic opportunity to intervene because the other officer's conduct "consisted only of one poke and push" which was not "prolonged"); *Pitzer v. City of East Peoria*, 708 F. Supp. 2d 740, 749–50 (C.D. Ill. 2010) (holding that there was no realistic opportunity for the defendant to prevent an officer from shooting the plaintiff because the "single gunshot [was] nearly instantaneous").

But Marshall alleges a series of events during which there were several opportunities for Hayes to intervene. Marshall says that Lentini reached into her vehicle, put it into park, and unbuckled her seat belt. First Am. Compl. ¶ 18. Based on Marshall's allegations, there was no reasonable basis for Lentini to do so. *See id.* So when Lentini started reaching into Marshall's vehicle, Hayes could have told Lentini to stop. *See Yang*, 37 F.3d at 285; *see also Abdullahi v. City of Madison*, 423 F.3d 763, 774 (7th Cir. 2005). Then, Marshall alleges that Lentini pulled her out of her vehicle and threw her to the ground. First Am. Compl. ¶¶ 18, 20. At that point, Hayes could have "called for a backup, called for help, or at least cautioned [Lentini] to stop." *Yang*,

37 F.3d at 285. Marshall says that she was no longer resisting or obstructing in any way once she was on the ground, yet Lentini pulled on her left arm hard enough to break her elbow. First Am. Compl. ¶ 21. Again, Hayes could have intervened when Lentini was roughly handcuffing Marshall. Because "the facts demonstrate several opportunities during which [Hayes] could have acted"—even if the alleged events happened quickly—Marshall plausibly pleads a failure-to-intervene claim against Hayes. *Yang*, 37 F.3d at 285–86.

Because Marshall plausibly alleges an individual claim against Hayes, she also plausibly states an indemnification claim against the Village of Oswego. *See* Oswego Defs.' Br. at 5 (arguing that if the individual claim is dismissed, the indemnification claim must also be dismissed). So both claims survive the Oswego Defendants' motion to dismiss.

**IV. Conclusion**

The County Defendants' motion, R. 36, is granted; the Oswego Defendants' motion, R. 40, is denied.

ENTERED:

s/Edmond E. Chang
Honorable Edmond E. Chang
United States District Judge

DATE: September 2, 2026